UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 11-100 (RJL) |
| ) | |
| DARLENE MATHIS-GARDNER, ) | |
| ) | |
| Defendant. ) | |

**FILED**
JUN 2 2 2015
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>MEMORANDUM OPINION AND ORDER</u>
June 22, 2015 [#21]

This case comes before this Court on remand from our Court of Appeals for reconsideration of defendant Darlene Mathis-Gardner's Motion for Early Termination of Supervised Release pursuant to 18 U.S.C. § 3564(c) [Dkt. #21] ("Def.'s Mot."). Upon consideration of our Circuit's decision, the parties' briefs, the relevant law, and the entire record herein, Ms. Mathis-Gardner's motion for early termination of her supervised release is DENIED.

## BACKGROUND

On April 8, 2011, the United States Department of Justice, Antitrust Division, filed a two-count Information charging defendant with one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, and one count of Making False Claims Upon the United States, in violation of 18 U.S.C. § 287. *See* Information [Dkt. #1]. On April 18, 2011, defendant pleaded guilty to both counts pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(B), admitting that her actions and involvement in the charged offenses were "fairly and accurately describe[d]"

in the Statement of Offenses accompanying the plea agreement. Plea Agreement ¶ 4 [Dkt. #6]. That Statement outlines the details of defendant's conduct. *See generally* Statement of Offenses [Dkt. #5]. In particular, between March 2007 and January 2009 defendant conspired to defraud the United States by providing false and fraudulent information, documents, and representations to the United States General Services Administration ("GSA") in order to obtain a $1.3 million contract as part of the renovation of the headquarters for Immigration and Customs Enforcement ("ICE"). *Id.* at ¶¶ 1-7. Once defendant obtained the contract, she "knowingly gave false information to subordinates for them to use in preparing invoices that materially overstated the number of hours of work performed" by her company's personnel and directed these invoices to be submitted to GSA for payment. *Id.* at ¶ 8. Moreover, even after defendant learned of a criminal investigation involving the contract, she "continued submitting forged documents to GSA." Gov't's Mem. in Aid of Sentencing 10 [Dkt. #15] ("Gov't's Sentencing Mem."). Based on these actions, defendant agrees that the government could establish by a preponderance of the evidence that ICE suffered an actual loss of $389,738. Plea Agreement ¶ 10.

For these offenses, defendant faced a statutory maximum term of 5 years imprisonment, a period of supervised release of up to 3 years, a criminal fine of up to $779,476—twice the gross loss caused to the victim, an order of restitution in the amount of $389,738 to be paid to the victim, and a special assessment of $100 per count. Plea Agreement ¶¶ 5-7, 10. Consistent with the terms of the plea agreement, the United States recommended "a Guidelines-based sentence consisting of a period of incarceration within

the range of 21-27 months, a criminal fine of $18,000, a period of supervised release of three years, restitution to [ICE] of $389,738, and a $100 special assessment per count." Gov't's Sentencing Mem. 1-2. Defendant requested that the Court impose "a lengthy period of probation with community service rather than incarceration." Def.'s Mem. in Aid of Sentencing 2 [Dkt. #13] ("Def.'s Sentencing Mem."). Although the official guidelines range was not contested, this Court effectively gave defendant an additional one-level reduction based on her acceptance of responsibility, bringing the sentencing range to 18 to 24 months incarceration. Sentencing Tr. 42-43, Jul. 13, 2011 [Dkt. #33]. On July 19, 2011, this Court sentenced defendant to the low end of this range, imposing concurrent terms of imprisonment of 18 months on each count to be followed by concurrent 3-year terms of supervised release, restitution of $389,738, and a $200 special assessment. Judgment [Dkt. #19]. The payment of a criminal fine was waived. Sentencing Tr. 46-47.

Defendant served the imprisonment portion of her sentence and was released on her supervised release term on December 31, 2012. *United States v. Mathis-Gardner*, 783 F.3d 1286, 1287 (D.C. Cir. 2015). On February 25, 2014, just fourteen months after her release from prison, defendant moved to terminate her supervised release. *See generally* Def.'s Mot. In support of her motion, defendant argues that her "story is one of rehabilitation and success, as well as a dedication to making the lives of others better through giving back to the community." *Id.* at 2. She states that she has not only "complied with and successfully completed every condition of supervision," she has gone above and beyond the requirements of her supervised release by completing her

3

community service requirement "very early" and continuing to serve her community in a variety of ways. *Id.* at 2-3. The Government did not oppose the motion. *See generally* Resp. by United States as to Def.'s Mot. for Early Termination of Supervised Release [Dkt. #30]. On April 23, 2014, I denied defendant's request for early termination of supervised release. Minute Order, Apr. 23, 2014. She appealed. On April 21, 2015, our Circuit vacated my denial of defendant's motion and remanded the case for reconsideration consistent with its opinion. *See Mathis-Gardner*, 783 F.3d at 1290.

## DISCUSSION

All post-sentencing changes to the terms of a defendant's supervised release are governed by 18 U.S.C. § 3583(e). Pursuant to Section 3583(e), a Court may terminate a defendant's supervised release "at any time after the expiration of one year of supervised release" if the Court is satisfied that two requirements are met: (1) early termination must be "warranted by the conduct of the defendant released" and (2) early termination must be in "the interest of justice." *See* 18 U.S.C. § 3583(e)(1). In deciding whether a modification is warranted, the Court must consider several of the factors enumerated in 18 U.S.C. § 3553(a), such as deterrence, public safety, rehabilitation, and consistency in sentencing. *See Mathis-Gardner*, 783 F.3d at 1288.

Section 3583(e) does not provide any guidance on when early termination is "warranted by the conduct of the defendant released," but courts considering this provision have found that mere compliance with the conditions of release is not enough to merit early termination of supervised release because "[m]odel prison conduct and full compliance with the terms of supervised release is what is expected of a person under the

magnifying glass of supervised release." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005); *see also United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) (finding that while the defendant's "post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule"). Rather, "a defendant must show something 'of an unusual or extraordinary nature' in addition to full compliance." *United States v. Etheridge*, 999 F. Supp. 2d 192, 196 (D.D.C. 2013) (quoting *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003)).

In this case, defendant argues that her conduct on supervised release has indeed been extraordinary. Defendant explains that she has not only "complied with and successfully completed every condition of supervision," but has made efforts to "get businesses in the community to hire ex-offenders," "has arranged for other members of the community to make donations of books and magazines to Alderson for the inmates since her release," and has "worked with [the] Probation Office to develop a White Collar Female Ex-Offender pilot program with the support of the D.C. Chamber of Commerce." Def.'s Mot. 3. The Court commends defendant for her evident commitment to giving back to her community. The Court, however, needs not decide whether these actions are so "unusual or extraordinary" as to warrant early termination of supervised release under Section 3583(e)(1) because, after considering the Section 3553(a) factors, I find that terminating defendant's supervised release is simply not in the interests of justice.

The sentence I imposed on defendant for her crimes was carefully calibrated to reflect the seriousness of her offense, provide adequate punishment, and to deter others

who may be similarly inclined to defraud the government. Sentencing Tr. 46 ("But under the circumstances, I think a combination of all of these things is necessary not only to promote respect for the law, not only is it adequate punishment, it perhaps more important than anything else is a deterrent to others who may be similarly inclined to defraud the Government...."). As I explained during defendant's sentencing, her conduct was very serious—it was not "run-of-the mill white collar conduct;" rather, her conduct involved "substantial amounts of money." *Id.* at 43. Although I did not believe defendant was likely to re-offend, I emphasized the need to impose adequate punitive measures to deter others who may be inclined to engage in similar fraudulent conduct. *Id.* at 43-46. In balancing jail time with supervised release, I fashioned a sentence that, in my judgment, adequately punished defendant for her serious offense and would serve to deter others from defrauding the government.

As one element of the sentence, supervised release is necessary to meet both the goal of punishment and the goal of deterrence. Indeed, supervised release serves a multitude of purposes—it is not only designed for rehabilitation and re-integration, or as defendant suggests, simply a vehicle to facilitate community service; rather, supervised release is also a form of punishment. *See United States v. Ginyard*, 215 F.3d 83, 87 (D.C. Cir. 2000) ("Supervised release is punishment." (citing *United States v. Gilchrist,* 130 F.3d 1131, 1133 (3d Cir.1997))). To be sure, "it is a deprivation of some portion of one's liberty imposed as a punitive measure for a bad act." *Gilchrist,* 130 F.3d at 1134; *see also Johnson v. United States*, 154 F.3d 569, 571 (6th Cir. 1998) (finding that although "rehabilitation is a primary purpose of supervised release," it "is also punitive in nature"),

*rev'd on other grounds*, 529 U.S. 53 (2000). Were it otherwise, I doubt defendant would have sought to have her term of supervised release terminated. As one component of punishment, supervised release serves to further the goal of general deterrence. As the Supreme Court has stated, "[o]ur jurisprudence has always accepted deterrence in general... as [a] proper goal[] of punishment." *Furman v. Georgia*, 408 U.S. 238, 343 (1972) (citation omitted).

## CONCLUSION

On the day of sentencing, the combination of jail time and supervised release I imposed was a just and fair punishment for the serious crime defendant committed and was calculated to achieve maximum general deterrence. It remains so today.

Accordingly, it is hereby

**ORDERED** that the Defendant's Motion for Early Termination of Supervised Release [Dkt. #21] is **DENIED**.

**SO ORDERED.**

RICHARD J. LEON
United States District Judge